IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-379-BO

| | |
|---|---|
| PATCH RUBBER COMPANY,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R |
| KIRK TOELKE,<br>    Defendant. | )<br>)<br>) |

This cause comes before the Court on plaintiff's motion for preliminary injunction. A hearing was held on the matter before the undersigned on June 6, 2013, at Raleigh, North Carolina. For the reasons discussed below, plaintiff's motion for preliminary injunction is denied.

## BACKGROUND

Plaintiff (Patch Rubber), a wholly owned subsidiary of Myers Industries headquartered in Weldon, North Carolina, manufactures and sells tire repair and retreading products, industrial rubber products, and permanent and traffic marketing tape. Defendant (Toelke) was hired by Patch Rubber in August 2007 as general manager of its Weldon plant; Toelke's employment contract contained non-disclosure and non-competition provisions. Toelke's last day of work for Patch Rubber was March 28, 2013. Thereafter, Toelke began working for REMA TIP TOP North America (REMA) at its Madison, Georgia facility. Plaintiff alleges that REMA is a direct competitor and that by working for REMA Toelke has breached his employment contract and has or will inevitably disclose Patch Rubber's trade secrets.

Patch Rubber filed this action in Nash County Superior Court on May 17, 2013. Patch Rubber's request for a temporary restraining order (TRO) was granted *ex parte* on May 20, 2013,

as was its request for expedited discovery. The TRO was set to remain in effect until a ruling on Patch Rubber's motion for preliminary injunction, which was set for hearing in Nash County Superior Court on May 30, 2013. Toelke, after filing a motion to dissolve the TRO and to dismiss in state court, removed the action to this Court pursuant to its diversity jurisdiction. 28 U.S.C. §§ 1446 and 1332.

Pursuant to Patch Rubber and Toelke's joint request, this Court extended the TRO until June 6, 2013, at 2:00, the time at which the Court undertook consideration of Patch Rubber's motion for preliminary injunction. The Court also permitted REMA to intervene, with the consent of Patch Rubber and Toelke, for the limited purposes of protecting against potentially overbroad discovery of its confidential and proprietary information.

## DISCUSSION

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Green*, 533 U.S. 674 (2008). A movant must make a clear showing of *each* of four elements before a preliminary injunction may issue: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (holding that the *Blackwelder* balance-of-hardships test no longer applies in light of *Winter*) *vacated on other grounds*, 130 S. Ct. 2371 (2010) (memorandum opinion). Applying the standard announced in *Winter*, the Court finds that Patch Rubber has failed to establish that it is entitled to a preliminary injunction.

I. LIKELIHOOD OF SUCCESS ON THE MERITS

The complaint against Toelke raises two claims for relief: breach of Toelke's non-disclosure and non-competition agreements and misappropriation of secrets. Patch Rubber has failed to clearly show a likelihood of success on the merits on either of its claims.

## Non-competition Agreement

The non-competition clause in Toelke's contract with Patch Rubber is overbroad both as to scope and geography. In order to be valid and enforceable under North Carolina law, restrictive covenants between employers and employees must be in writing, based upon valuable consideration, reasonably necessary for the protection of legitimate business interests, reasonable as to time and territory, and not otherwise against public policy.[1] *A.E.P. Industries, Inc. v. McClure,* 308 N.C. 393, 402-3 (1983). Covenants not to compete must withstand strict scrutiny, and any ambiguities must be drawn against the drafter. *Washburn v. Yadkin Valley Bank & Trust Co.,* 190 N.C.App. 315, 323 (2008) (citations omitted). The party who seeks to enforce a covenant not to compete has the burden to show that the covenant is reasonable, *Hartman v. W.H. Odell and Assocs., Inc.,* 117 N.C.App. 307, 311 (1994), and non-competition covenants are not looked upon favorably in modern law. *Id.*

*Scope Necessary to Protect Legitimate Business Interest*

The scope of this non-competition clause is in no way tailored to reasonably protect the

---

[1] Toelke does not challenge the remaining requirements for a valid restrictive covenant – that it be in writing, that it be based on valuable consideration, or that it is not otherwise against public policy.

3

legitimate business interests of Patch Rubber.[2] The agreement as drafted would prevent Toelke from being employed in *any manner* by either a direct competitor or any company engaged in a similar business. A fair reading of this clause would prevent Toelke from taking a job selling coffee in the cafeteria at a direct competitor, or potentially at any company engaged some way in the rubber business. Such overbroad restrictions on the scope of an employee's future employment have been repeatedly found to be unenforceable. *See e.g. Hartman*, 117 N.C.App. at 317 (finding overbroad a clause that would prohibit a former employee of an actuarial company from working as a custodian of another actuarial company); *VisionAIR, Inc. v. James*, 167 N.C.App. 504, 508 (2004) (finding overbroad and unenforceable provision that would prevent former employee from doing "even wholly unrelated work at any firm similar to [his former employer]").

Nor is the non-promotion provision tailored to reasonably protect Patch Rubber's legitimate business interests. The terms "promote" and "similar in any way" are not defined in the agreement, and, as written, this provision could be construed to prevent Toelke from discussing the values of non-Patch Rubber-produced rubber products to a friend or colleague or potentially from purchasing a non-Patch Rubber-produced tire tread product from an auto parts store. Because such ambiguities must be construed against the drafter, these provisions as written are unenforceable. *See Henley Paper Co. v. McAllister*, 253 N.C. 529, 534-35 (1960)

---

[2] The non-competition agreement provides that for one year following termination of Toelke's employment, Toelke may not, *inter alia*, "become employed or affiliated in any capacity with, perform services of any type on behalf of, or enter into or engage in any business or other pursuit that competes with and/or is similar to the [Patch Rubber]'s business in any way" or "promote the business of any person, firm, association, or corporation engaged in a business which competes with/and or is similar in any way to [Patch Rubber]." [DE 1-1 at 15].

4

(non-competition agreement that "excludes defendant from too much territory and from too many activities" is void and unenforceable).

*Reasonableness as to Geography*

Patch Rubber has not demonstrated that the nationwide and U.S. territorial restriction is reasonable or necessary to protect its interest in maintaining its customers.[3] "A restriction as to territory is reasonable only to the extent that it protects the legitimate interest of the employer in maintaining its customers." *Manpower of Guilford Cnty, Inc. v. Hedgecock*, 42 N.C.App. 515, 523 (1979). "To prove that a geographic restriction in a non-compete provision is reasonable, an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Farr Associates, Inc. v. Baskin*, 138 N.C. App. 276, 281 (2000) (citation omitted). Additionally, geographic "territory should *only* be limited to areas in which the employee made contacts during the period of his employment." *Manpower*, 42 N.C. App. at 522 (emphasis added).

Toelke was employed at Patch Rubber's sole plant in Weldon, North Carolina. In support of the geographic restriction, the complaint alleges that Toelke became the direct and principal contact with many of Patch Rubber's established, new, and prospective customers, and that Patch Rubber uses the distribution channels of its parent company which are nationwide in scope. Patch Rubber's brief in support of its motion provide scant more detail about the

---

[3]There is no restricted area specifically applied to Toelke in the agreement; rather, the agreement defines the applicable restricted area in relation to the scope of activities carried on by an employee. Patch Rubber contends that, because Toelke's activities were those of upper management, he controlled, directed, and influenced activities that were nationwide in scope and that his restricted area is therefore defined as the United States of America and the territories thereof. [DE 1-1 at 16].

5

locations of its customers and Toelke's involvement with them, contending only that Patch Rubber products are sold in every state and internationally and that Toelke was Patch Rubber's top executive.

Such allegations fail to sufficiently demonstrate where Patch Rubber's customers, not its parent company's, are, whether Toelke himself ever made contacts with specific customers in all fifty states and the U.S. territories, and why such a broad restrictive covenant is necessary to protect its interest in maintaining customers. Indeed, using Patch Rubber's logic, because it sells its products internationally and Toelke was its top executive, Toelke could reasonably have been prevented from working for any company that operates a "similar" business anywhere in the world for one year. Because Patch Rubber has failed to establish that it geographic restriction of the entire United States and its territories is reasonable, and because "equity will neither enforce nor reform an overreaching and unreasonable agreement," the entire covenant must fail. *Beasley v. Banks*, 90 N.C. App. 458, 460 (1988) (citation omitted).

Non-disclosure Agreement

Patch Rubber has not demonstrated likely success on its claim for breach of Toelke's non-disclosure agreement, as the complaint fails to allege the facts constituting the breach. *VisionAIR*, 167 N.C.App. at 510 (citing *RGK, Inc. v. U.S. Fid. & Guar. Co.*, 292 N.C. 668, 675 (1977)). The complaint alleges only that Toelke has breached his agreement with Patch Rubber by becoming employed by REMA and that Toelke has disclosed and will inevitably continue to disclose trade secrets; the complaint does not point to any specific incidence of disclosure that would be a breach of Toelke's agreement.

6

## Misappropriation of Trade Secrets

Patch Rubber's complaint fails to allege with sufficient specificity the trade secrets Toelke will or allegedly has disclosed, nor has it forecast sufficient evidence based on its expedited discovery that Toelke has or will disclose trade secrets. The North Carolina Trade Secret Protection Act provides that "actual or threatened misappropriation of a trade secret may be preliminarily enjoined during the pendency of [an] action". N.C. Gen. Stat. § 66-154(a). In order to adequately plead misappropriation of trade secrets, a plaintiff "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices, Inc. v. Michalski*, 157 N.C.App. 462, 453 (2003). General allegations and sweeping conclusory statements are insufficient. *VisionAIR*, 167 N.C.App. at 511.

In its complaint, Patch Rubber has identified the following trade secrets that Toelke has inevitably disclosed and will continue to inevitably disclose: plans, pricing methods, processes, techniques, present and prospective customer lists, manufacturing processes, product formulations, recipes and customers' purchasing requirements, service requirements, product preferences, and purchasing volumes. While some of these categories of information may in fact include trade secrets, *see Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C.App. 49, 53 (2005), Patch Rubber has failed to identify in its complaint *specific* trade secrets that Toelke has or will allegedly misappropriate. The Court cannot, based on the sweeping conclusory statements alleged, determine whether misappropriation has or is threatened to occur.

Insofar as Patch Rubber contends that expedited discovery has revealed that it is entitled

7

to a preliminary injunction on its trade secrets claim, the Court is not convinced. Only where there has been evidence of actual misappropriation or bad faith are North Carolina courts willing to prevent former employees from working for a competitor solely to protect confidential information. *Asheboro Paper*, 559 F. Supp.2d at 677 (citing *Merck & Co. Inc. v. Lyon*, 941 F. Supp. 1443, 1459 (M.D.N.C. 1996)).

Patch Rubber contends that Toelke has revealed during discovery that he has misappropriated documents that contain its most sensitive information, including documents containing proprietary formula and process for engineering products to fit a specific customer's needs and Patch Rubber's strategic planning, future projections, and launch of new products and segments. Indeed, Toelke has stated in his deposition that, while he was still an employee of Patch Rubber, he downloaded several documents containing a strategic plan for Myers Tire Supply and Patch Rubber customer cost and formula information; Toelke also testified that he considers the information to be proprietary to Patch Rubber that he has not shared it with anyone at REMA or otherwise. Toelke Depo at 214, 223, 225. Toelke stated that the reason he downloaded these documents was to use them as templates, not to share their proprietary information, and that some of the information contained in the documents would already be outdated and of no use. *Id.* at 229, 231.

Even in light of such testimony, the Court has still been presented with no evidence that helps to clarify precisely why the information identified constitutes a trade secret. Patch Rubber has therefore failed at this stage of the proceedings to demonstrate what, if anything, in its strategic plan, formula, or customer cost information is deserving of trade secret protection. *Analog Devices*, 157 N.C.App. at 468. The Court will not on Patch Rubber's assertion assume

8

that because Toelke has admitted to downloading a document containing a "formula" that he has necessarily misappropriated a trade secret. *Id.*; *see also Sunbelt Rentals*, 174 N.C.App. at 53 (factors to consider when determining whether something is a trade secret include extent to which information is known outside the business, the value of information to the business and its competitors, the amount of effort or money expended developing the information, and the ease with which the information could be acquired or duplicated).[4]

Moreover, because the Court has before it no evidence that Toelke intends to violate his non-disclosure agreement or to share any proprietary or trade secret information with REMA, it declines to issue an injunction "to restrain one from something he is not attempting to do." *Analog Devices*, 157 N.C.App. at 473 (quoting *Travenol Labs., Inc. v. Turner*, 30 N.C.App. 686, 696 (1976) and declining to adopt the doctrine of inevitable disclosure). Accordingly, Patch Rubber has not demonstrated a likelihood of success on the merits as to its misappropriation of trade secrets claim at this stage of the proceedings, even in light of the expedited discovery that has taken place.

Because Patch Rubber cannot demonstrate that it is likely to succeed on the merits on any of its claims, it has failed to satisfy the *Winter* standard which requires that each prong be demonstrated in order for a preliminary injunction to issue. Accordingly, Patch Rubber's motion for preliminary injunction must be denied.

## CONCLUSION

For the reasons discussed above, plaintiff's motion for preliminary injunction is

---

[4]For example, though not in evidence in this matter, counsel for Toelke in discussing some of the rubber formulas used by Patch Rubber customers noted that such formulas could easily be properly obtained by taking a sample of the product to a laboratory for testing.

9

DENIED. As the TRO in this matter has already expired, defendant's motion to dissolve the TRO is DENIED AS MOOT. The Court will consider defendant's motion to dismiss once it has been fully briefed and is ripe for ruling. For good cause shown, plaintiff's motion to seal [DE 25] is GRANTED.

SO ORDERED, this 1 4 day of June, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE